No. 22-13951-GG

In the
# United States Court of Appeals
## for the Eleventh Circuit

---

JASON NEIHEISEL,

*Movant-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NOS. 3:20-CV-313-BJD-JBT & 3:17-CR-89-BJD-JBT-1

---

## BRIEF OF THE UNITED STATES

---

ROGER B. HANDBERG
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

EMILY C. L. CHANG
Assistant United States Attorney
Appellate Division
USA No. 166
400 W. Washington St., Ste. 3100
Orlando, FL 32801
(407) 648-7500

December 12, 2023

## Certificate of Interested Persons
## and Corporate Disclosure Statement

In addition to the persons identified in the certificate of interested persons and corporate disclosure statement in Jason Neiheisel's principal brief, the following persons have an interest in the outcome of this case:

1. Chang, Emily C. L., Assistant United States Attorney;

2. Handberg, Roger B., United States Attorney;

3. Hoppmann, Karin, former Acting United States Attorney;

4. Minor victims whose identities have been protected;

5. Muldrow, W. Stephen, former Acting United States Attorney;

6. Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

7. Rhodes, Yvette, Assistant United States Attorney; and

8. Wandner, Jason M., Esq.

No publicly traded company or corporation has an interest in the outcome of this appeal.

## Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement .........C-1

Statement Regarding Oral Argument ............................................................. i

Table of Contents................................................................................... ii

Table of Citations ................................................................................. v

Statement of Jurisdiction ....................................................................... ix

Statement of the Issues ......................................................................... 1

Statement of the Case............................................................................ 2

    *Course of Proceedings* ....................................................................... 2

    *Statement of the Facts*....................................................................... 4

    A.   Background on BitTorrent and File-Sharing ................................. 4

    B.   The Investigation ..................................................................... 5

        1.   Neiheisel's Confession and Search of His Tablet.................. 7

    C.   The Trial ............................................................................... 13

        1.   Neiheisel's computer expert............................................. 13

        2.   Neiheisel's Testimony ..................................................... 13

        3.   Neiheisel's work computer .............................................. 15

    D.   Section 2255 Motion .............................................................. 16

        1.   Work Computer................................................................ 16

       2.    Torrential Downpour ........................................................ 19

*Standard of Review* ................................................................. 21

Summary of the Argument ......................................................... 22

Argument and Citations of Authority .......................................... 24

I.     The district court did not err in denying Neiheisel's claim that his counsel was ineffective for failing to introduce evidence that his work computer was clean .............................. 24

    A.    Given the strength of the evidence against him at trial, Neiheisel has not established a "reasonable probability" that the trial outcome would have been different but for counsel's alleged deficiency, as required by *Strickland*'s prejudice prong ................................................... 24

    B.    Bell did not provide deficient assistance by not obtaining expert review of the work computer or eliciting testimony about it ................................................................ 33

        1.    Expert Review of Neiheisel's Work Computer ................... 34

        2.    Additional Testimony About Lack of Child Pornography on Neiheisel's Work Computer ...................... 34

II.    Neiheisel is not entitled to relief on his claim that his counsel was ineffective for failing to seek inspection of, or discovery related to, the Torrential Downpour software ........................... 36

    A.    Neiheisel abandoned the argument he lodged in the district court by failing to brief it on appeal, and the argument Neiheisel briefs here falls outside the scope of the certificate of appealability .......................................................... 36

B.    Even if this Court were to entertain Neiheisel's attempt to rehash his alibi claim (now framed in the context of a failure to investigate Torrential Downpour), it should affirm the district court's judgment because he has failed to establish deficient performance or prejudice ...................... 40

Conclusion ................................................................................................ 45

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

# Table of Citations

## Cases

*Access Now, Inc. v. Southwest Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004)..........................................................38–39

*Aldrich v. Wainwright*,
  777 F.2d 630 (11th Cir. 1985)..................................................................... 44

*Arthur v. Allen*,
  459 F.3d 1310 (11th Cir. 2006).................................................................. 20

*Atkins v. Singletary*,
  965 F.2d 952 (11th Cir. 1992)...............................................................29, 36

*Beeman v. United States*,
  871 F.3d 1215 (11th Cir. 2017).................................................................. 35

*Bobby v. Van Hook*,
  558 U.S. 4 (2009)........................................................................................ 27

*Borden v. Allen*,
  646 F.3d 785 (11th Cir. 2011)..................................................................... 39

*Brownlee v. Haley*,
  306 F.3d 1043 (11th Cir. 2002)................................................................... 44

*Burger v. Kemp*,
  483 U.S. 776 (1987) .................................................................................... 35

*Carmichael v. United States*,
  966 F.3d 1250 (11th Cir. 2020)................................................................... 24

*Cave v. Sec'y for Dep't of Corr.*,
  638 F.3d 739 (11th Cir. 2011)..................................................................... 25

*Chandler v. United States*,
  218 F.3d 1305 (11th Cir. 2000)................................................22, 33–36

*Clark v. Comm'r, Alabama Dep't of Corr.*,
  988 F.3d 1326 (11th Cir. 2021)................................................................... 24

*Darden v. Wainwright,*
477 U.S. 168 (1986) ................................................................. 22

*Denson v. United States,*
804 F.3d 1339 (11th Cir. 2015) ............................................ 22

*Dorsey v. Chapman,*
262 F.3d 1181 (11th Cir. 2001) ............................................ 39

*Gates v. Zant,*
863 F.2d 1492 (11th Cir. 1989) ............................................ 41

*Harrington v. Richter,*
562 U.S. 86 (2011) ...............................................22, 25, 28, 32

*Hayes v. Sec'y, Fla. Dep't of Corr.,*
10 F.4th 1203 (11th Cir. 2021) ............................................ 22

*Holladay v. Haley,*
209 F.3d 1243 (11th Cir. 2000) ............................................ 33

*Ingram v. Warden, Holman Corr. Facility,*
80 F.4th 1304 (11th Cir. 2023) ............................................ 24

*Jennings v. Stephens,*
135 S. Ct. 793 (2015) ............................................................ 35

*Jones v. GDCP Warden,*
753 F.3d 1171 (11th Cir. 2014) ................................ 25, 30, 42

*Jones v. United States,*
82 F.4th 1039 (11th Cir. 2023) ............................................ 21

*McKay v. United States,*
657 F.3d 1190 (11th Cir. 2011) ............................................ 35

*Murray v. United States,*
145 F.3d 1249 (11th Cir. 1998) ............................................ 38

*Payne v. Allen,*
539 F.3d 1297 (11th Cir. 2008) ............................................ 42

*Perkins v. United States,*
  73 F.4th 866 (11th Cir. 2023) ....................................................24–25, 42, 44

*Strickland v. Washington,*
  466 U.S. 668 (1984) ....................................................24–26, 30, 32–33, 41

*Sullivan v. Sec'y, Fla. Dep't of Corr.,*
  837 F.3d 1195 (11th Cir. 2016) .............................................................. 41

*United States v. Brown,*
  53 F.3d 312 (11th Cir. 1995) ................................................................... 29

*United States v. Brown,*
  996 F.3d 1171 (11th Cir. 2021) .............................................................. 27

*United States v. Browne,*
  505 F.3d 1229 (11th Cir. 2007) .............................................................. 27

*United States v. Carroll,*
  886 F.3d 1347 (11th Cir. 2018) .............................................................. 32

*United States v. Green,*
  873 F.3d 846 (11th Cir. 2017) ................................................................. 29

*United States v. Hough,*
  803 F.3d 1181 (11th Cir. 2015) .............................................................. 29

*United States v. Isnadin,*
  742 F.3d 1278 (11th Cir. 2014) .............................................................. 27

*United States v. Mieres-Borges,*
  919 F.2d 652 (11th Cir. 1990) ................................................................. 27

*United States v. Neiheisel,*
  771 F. App'x 935 (11th Cir. 2019) ....................................................... 3, 31

*Waters v. Thomas,*
  46 F.3d 1506 (11th Cir. 1995) ................................................................. 33

*White v. Singletary,*
  972 F.2d 1218 (11th Cir. 1992) ..........................................................34, 41

**Statutes**

18 U.S.C. § 2252(a)(2) ................................................................ 2

18 U.S.C. § 2252(b)(1) ................................................................ 2

28 U.S.C. § 1291 ........................................................................ ix

28 U.S.C. § 1331 ........................................................................ ix

28 U.S.C. § 2253(c) .................................................................... ix

28 U.S.C. § 2253(c)(1) ............................................................... ix

28 U.S.C. § 2255 ................................. ix, 1–3, 16, 19–21, 23, 35–36

**Rules**

Fed. R. App. P. 4(a) .................................................................. ix

# Statement of Jurisdiction

This is an appeal from a final order and judgment of the United States District Court for the Middle District of Florida denying a 28 U.S.C. § 2255 motion. Civ. Docs. 60, 61.[1] That court had jurisdiction. *See* 28 U.S.C. § 1331. The court entered its order on November 9, 2022, Civ. Doc. 60, and its judgment on November 14, 2022, Civ. Doc. 61. Neiheisel timely filed his notice of appeal on November 21, 2022, Civ. Doc. 62. *See* Fed. R. App. P. 4(a). A judge of this Court granted a certificate of appealability. Civ. Doc. 67; *see* 28 U.S.C. § 2253(c). This Court has jurisdiction over this appeal. *See* 28 U.S.C. §§ 1291, 2253(c)(1), and 2255.

---

[1]Neiheisel's underlying criminal case is *United States v. Neiheisel*, No. 3:17-cr-089-BJD-JBT (M.D. Fla.), and his section 2255 case is *Neiheisel v. United States*, No. 3:20-cv-313-BJD-JBT. References to filings in the criminal case number are cited as "Crim. Doc. [document number]." References to filings in the civil case are cited as "Civ. Doc. [document number]." Record documents are cited based on the page number that appears in the header generated by the district court's electronic filing system. We cite Neiheisel's brief using its own page numbers**.**

**Statement of the Issues**

I.  Did the district court err in finding that Neiheisel was not prejudiced by his counsel's failure to introduce evidence that his work computer did not contain child pornography? If so, did the district court also err in denying his claim that counsel was ineffective for failing to seek expert review of that computer?

II. Are the arguments that Neiheisel advances on appeal concerning Torrential Downpour (the specialized government software that law enforcement used to investigate him) within the scope of this Court's certificate of appealability? If so, did the district court err in finding that his counsel was not ineffective for failing to seek inspection of (or discovery related to) Torrential Downpour?

# Statement of the Case

Jason Neiheisel was convicted of distributing child pornography through a peer-to-peer internet file-sharing network. After an unsuccessful appeal and petition for certiorari, he moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 on various grounds. The district court denied his section 2255 motion, and this Court granted him a certificate of appealability (COA) for two of those grounds: (1) Neiheisel's claim that his trial counsel, Thomas Bell, was ineffective because Bell hadn't introduced enough evidence that Neiheisel's work computer contained no child pornography; and (2) his claim that Bell was ineffective for failing to seek inspection of (or discovery concerning) Torrential Downpour, the specialized government software that law enforcement used to investigate him.

## *Course of Proceedings*

In 2017, a federal grand jury charged Jason Neiheisel with two counts of knowingly distributing child pornography over the internet, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Crim. Doc. 22. Following a five-day trial, a jury found him guilty of both counts. Crim. Docs. 58–59, 64, 66, 68, 71. At sentencing, the district court granted the United States' motion to dismiss Count Two because of a potential multiplicity issue. Crim. Doc. 114 at 8–9. Given Neiheisel's total offense level (31) and criminal history category (I), his

guidelines range was 108 to 135 months' imprisonment. Crim. Doc. 103 at 1.

The district court varied downward and sentenced Neiheisel to serve 84

months' imprisonment, to be followed by 5 years' supervised release. Crim.

Doc. 102. On appeal, Neiheisel argued (among other things) that he had

received ineffective assistance of counsel because Bell, his trial counsel, had

failed to investigate a potential alibi. *See United States v. Neiheisel*, 771 F. App'x

935, 943 (11th Cir. 2019). This Court declined to address that claim and

affirmed on other grounds. *Id.* He unsuccessfully petitioned the Supreme Court

for a writ of certiorari. Crim. Doc. 131.

In 2020, Neiheisel filed a section 2255 motion, asserting (in relevant

part) that Bell had been ineffective because Bell had failed to (a) introduce

evidence that Neiheisel's work computer did not contain child pornography;

(b) seek expert review of that computer; and (c) seek inspection of or discovery

related to Torrential Downpour, the software that law enforcement had used to

investigate him. Civ. Doc. 14 at 3–4. Following an evidentiary hearing and

review of objections to the magistrate judge's report and recommendation, the

district court denied the motion and entered judgment for the United States.

Civ. Docs. 30, 40–41, 57–61.

This Court later granted Neiheisel a COA on these issues:

> (1) Whether the district court erred in finding that Neiheisel
> was not prejudiced by counsel's failure to introduce evidence

that Neiheisel's work computer contained no child pornography; and, if so, whether the district court erred also in denying Neiheisel's claim that counsel was ineffective for failing to seek expert review of that computer; and

(2) Whether the district court erred in finding that counsel was not ineffective for failing to seek inspection of, or discovery related to, specialized government software used at trial to show that child pornography was distributed from Neiheisel's home internet network.

Civ. Doc. 67 at 2–3.

## *Statement of the Facts*

### A.    Background on BitTorrent and File-Sharing

A peer-to-peer internet file-sharing platform allows its users to communicate with each other and to share downloadable files. Crim. Doc. 119 at 84, 98. People who trade child pornography often use file-sharing platforms to do so, and BitTorrent is the most popular internet platform among them. *Id.* at 87, 98. In order to access the BitTorrent network, a user needs a BitTorrent client. *Id.* at 160–61. Vuze is one such client. *Id.*

Vuze and other similar software programs permit users to access "torrent" files that have been downloaded from the internet. Crim. Doc. 120 at 148. A torrent file doesn't contain images or videos, but it contains code that tells the computer where on a torrent network certain such material can be located. *Id.* Once a user downloads a torrent file, he then has to use Vuze or a

similar program to access the material. *Id.* at 149.

A computer user who wants to share videos can place those videos in a BitTorrent or Vuze shared folder on his own computer. Crim. Doc. 120 at 149. Other BitTorrent or Vuze users can access that folder and download the videos from that shared folder (or from the computer of the original sharer). *Id.* So, as more people download the videos into their own shared folders, the videos become accessible from more sources. *Id.*

## B.    The Investigation

In December 2015, Columbia County Sheriff's Deputy Jimmy Ray Watson determined that a computer using the internet protocol (IP) address 76.106.190.147 was sharing child pornography over the BitTorrent file-sharing platform on the internet. Crim. Doc. 119 at 36–37, 43–44, 78–79. Deputy Watson used Torrential Downpour—a specialized, law enforcement-specific software—to connect with a computer at that IP address when it was sharing child pornography on December 6 and 15. *Id.* at 40–41, 43–44, 46–47, 73. On February 6 and 7, 2016, Deputy Watson connected with it again, downloading 50 child-pornography videos that the computer had shared. *Id.* at 47–50, 57, 70, 72–73; *see* Gov't Tr. Ex. 6.

One of the videos shared on February 6 had the words "R@ygold," "Lolita," and "Bed Sex," in addition to Chinese characters, in its title. Crim.

Doc. 119 at 57, 69–71, 74–75; *see* Gov't Tr. Exs. 1, 4. That video—which was the basis of Count One—showed a girl between the ages of five and seven performing oral sex on an adult male. Crim. Doc. 119 at 58, 61; *see* Gov't Tr. Exs. 3, 3A. Another video—which was the basis of Count Two—was entitled "bathtime with daddy-3yo girl ped.mpg." Crim. Doc. 119 at 52, 65, 71. That video showed a child of about three or four years old following the directions of a man and rubbing her own genitals and putting her mouth on an adult male's erect penis. Crim. Doc. 119 at 53, 65; *see* Gov't Tr. Exs. 5, 5A. Deputy Watson downloaded both files from that IP address on February 6, between 3:51 a.m. and 10:00 a.m. Civ. Doc. 32 at 49–50, 54; Crim. Doc. 119 at 57–58, 75; Gov't Tr. Ex. 1 at 9–10. The file-sharing program on the computer that shared those files with Deputy Watson was Vuze version 5.7.0.0. Crim. Doc. 119 at 78; *see* Gov't Tr. Ex. 1 at 8.

The next day, Deputy Watson connected with a computer at that IP address—which again was using Vuze version 5.7.0.0—from 11:32 a.m. through 1:02 p.m. Gov't Tr. Ex. 2. Again, that computer made the child-pornography files that are the subject of Counts One and Two available for Deputy Watson to download. *Id.* Deputy Watson also connected with a computer at that IP address (which still was using Vuze version 5.7.0.0) from 11:32 a.m. on February 7 through 2:38 p.m. on February 8. Civ. Doc. 30-2 at

3; Civ. Doc. 32 at 46, 54, 128.

Comcast later confirmed that the IP address that had shared the material with Deputy Watson had been subscribed to Jason Neiheisel at an apartment in Jacksonville, Florida, on the date of the connections (i.e., December 6 and 15, 2015, and February 7, 2016). Crim. Doc. 119 at 48–50, 73–74; Crim. Doc. 120 at 65; *see* Gov't Tr. Ex. 15.

## 1. Neiheisel's Confession and Search of His Tablet

The FBI took over the investigation in March 2017—more than one year after the downloads. Crim. Doc. 120 at 66. On April 11, 2017, after reviewing the case file, FBI Special Agents Jonathan MacDonald and Nicholas Privette went to the apartment where the IP address was located to conduct an interview. Crim. Doc. 119 at 104–05.

They found Neiheisel and his fiancée there, and he agreed to be interviewed. Crim. Doc. 119 at 105–06; Crim. Doc. 120 at 18–19. He said that he had moved into the apartment with his fiancée in October 2015. Crim. Doc. 119 at 107. He acknowledged that he had a Comcast internet subscription in his name and had set up a password-protected wireless home network. *Id.* at 108; Crim. Doc. 120 at 19. He said that he had a solid understanding of information technology and that he had two laptop computers: a work computer (which was on the couch next to him) and a Microsoft tablet (which

he agreed to retrieve from another room and show to the agents). Crim. Doc. 119 at 108–09, 116; Crim. Doc. 120 at 21. Both devices were password-protected. Crim. Doc. 119 at 109.

Neiheisel said that he had owned and used the tablet since before 2015, and that he had used it to access the internet and to download movies at that apartment. *Id.* at 109–10; Crim. Doc. 120 at 21–22. He specifically mentioned that he had downloaded the movie *Elf* onto the tablet. *Id.* at 22.

When asked whether he was familiar with file-sharing programs, Neiheisel said he was familiar with both LimeWire and BitTorrent. *Id.*; Crim. Doc. 119 at 110. He told the officers that BitTorrent was not installed on his tablet, though. *Id.*

The agents then told Neiheisel that they had been monitoring his IP address and that they had downloaded child pornography shared from that address. Crim. Doc. 119 at 111. They showed him the titles of the 50 files that had been shared. *Id.* Neiheisel said he recognized them as files that he had downloaded. *Id.*; Crim. Doc. 120 at 23–25. When asked how long he had been downloading child pornography, he "sort of laughed" nervously and responded, "Awhile." *Id.* at 23; Crim. Doc. 119 at 111–12. He also admitted that he recognized some of the terms in the video titles that were indicative of child pornography (such as "PTHC," which stands for "pre-teen hard core").

*Id.* at 112–13; Crim. Doc. 120 at 25. He also stated that he had downloaded and viewed child pornography on the tablet within the last two months. *Id.* at 23.

Neiheisel told the agents that he had obtained or viewed child pornography from various sources, including a chatroom called "Chat Tango." Crim. Doc. 119 at 114; Crim. Doc. 120 at 26. He said that, when using that chatroom, he didn't have to use search terms to find child pornography because other chatroom users provided links to locations where that material was available; he only had to click on the link to view, copy, or download it. *Id.* at 26–27; Crim. Doc. 119 at 114.

The agents had with them a laptop computer that contained some of the videos that Deputy Watson had downloaded from a shared folder at Neiheisel's IP address. Crim. Doc. 119 at 105–07. They showed Neiheisel both of the videos described above, and he said that he recognized them as videos that he had downloaded and viewed within the previous two months. *Id.* at 115. He said that he had used the tablet to view and download the "bathtime" video within the past week. *Id.* at 115–16; Crim. Doc. 120 at 28–29, 77–78. He said that no one else knew about his child-pornography activities and that he had accessed those materials for his personal use. *Id.* at 30; Crim. Doc. 119 at 116.

Neiheisel said that he used the Microsoft tablet to access child pornography but that there "shouldn't be any child pornography on there." Crim. Doc. 119 at 116; Crim. Doc. 120 at 30. He told the agents that he would save the materials that he downloaded in a "downloads" folder and would periodically categorize and organize the collection. *Id.* at 30–31. As for his motivation for downloading child pornography, he acknowledged that it was the "thrill of the hunt" in terms of what he could find, both in content and variety of age. *Id.* at 31–33; Crim. Doc. 119 at 117.

The agents asked Neiheisel for permission to search the tablet. Crim. Doc. 119 at 117–18. Although he did not consent to a search, he gave them the tablet's password. *Id.* at 118; Crim. Doc. 120 at 33–34. Agent Privette then told Neiheisel that, because Neiheisel had told the agents that he had used the tablet to access child pornography, they would be taking the tablet with them. *Id.* at 34; Crim. Doc. 119 at 118. When they ended the interview, Neiheisel said that he might reach out to them in the future to provide more information. *Id.* at 119; Crim. Doc. 120 at 35. Later that day, Neiheisel called the FBI and said that he remained open to a follow-up interview. *Id.* at 39–41; Crim. Doc. 119 at 124–26.

The agents obtained a warrant to search the tablet. Crim. Doc. 119 at 123–24. Then, about two weeks after the initial interview, the agents met with

Neiheisel again at his prompting. *Id.* at 127; Crim. Doc. 120 at 41–43. A preliminary review of the tablet had been completed at that time, and no images of child pornography had been found on the tablet. *Id.* at 44, 85.

During that second interview, Neiheisel told the agents that, after more thought, he had remembered that he had never used BitTorrent in any capacity. Crim. Doc. 119 at 130; Crim. Doc. 120 at 46–47. Agent MacDonald responded by telling Neiheisel that that could not be correct because Neiheisel had previously told them that he had used BitTorrent not only to access child pornography but also to download the movie *Elf.* Crim. Doc. 119 at 130–31, 161; Crim. Doc. 120 at 47. Agent MacDonald also reminded Neiheisel that it had been through a shared folder on BitTorrent that investigators had obtained child pornography from his IP address. Crim. Doc. 119 at 131. Neiheisel then conceded that that was correct and that he had used BitTorrent to make child-pornography videos available to others. *Id.*; Crim. Doc. 120 at 47–48.

Neiheisel also confirmed his understanding that anyone on the BitTorrent network had access to the files that he had shared in his downloads folder. Crim. Doc. 119 at 132, 134; Crim. Doc. 120 at 49–51. He said that he had maintained files in the downloads folder to be shared for more than a day (but less than a month), and that he would delete materials when he no longer needed them. Crim. Doc. 119 at 135; Crim. Doc. 120 at 52. He denied using

any device other than the tablet for his child-pornography activities. Crim. Doc. 119 at 136.

An FBI computer forensics examiner ultimately found that version 5.7.0 of the Vuze peer-to-peer file-sharing program (the same version that had been used to share child pornography with Deputy Watson through Neiheisel's IP address) had been installed on the tablet on October 18, 2015. Crim. Doc. 119 at 78, 194–96. It had last been accessed on January 4, 2016 (a month before Deputy Watson's downloads from Neiheisel's IP address). *Id*. at 196. Vuze operates by accessing the BitTorrent network. *Id.* at 209–10. The examiner also found Neiheisel's 76.106.190.147 IP address in two of the Vuze log files. *Id*. at 195.

The examiner did not find any child pornography that had been downloaded via Vuze, although he did find that the movie *Elf* had been downloaded. Crim. Doc. 119 at 195–98. The examiner did not find evidence that any terms indicative of child pornography had been used to search the internet on the tablet, nor did he find any evidence of the two videos discussed above. *Id.* at 198–99. He saw, though, that the tablet's operating system had been updated two or three times, with the last update being on December 17, 2016, which could have resulted in the deletion of certain artifacts and files. *Id.* at 193, 199.

Neiheisel was arrested on May 4, 2017. Crim. Doc. 120 at 81.

## C.    The Trial

### 1.    Neiheisel's computer expert

At trial, Richard Connor, Neiheisel's expert in computer forensics, testified that, in his opinion, the tablet had not been used to download child pornography. Crim. Doc. 120 at 121. He said that he had found no evidence that the Vuze program had been run on February 6, 2016—the date on which a computer using Neiheisel's IP address had shared the two videos charged in the indictment. *Id.* at 121. He also testified that he had found that the tablet had accessed Chat Tango only once, in June 2016. *Id.* at 122. He said that he did not see any evidence that the tablet user had accessed any particular chatrooms or run any searches related to child pornography. *Id.* at 122, 129.

### 2.    Neiheisel's Testimony

Neiheisel testified in his own defense at trial, disputing much of the testimony of Agents MacDonald and Privette. Crim. Doc. 120 at 190–276. He explained that he lived in an apartment within which he had set up a password-protected wireless internet network. *Id.* at 192–97. He said that he had given the password to guests in his home and also had posted the password in the guest bedroom on a chalkboard. *Id.* at 202. Contrary to the agents' testimony, he claimed that, during his first interview with the FBI

agents on April 11, 2017, he had denied familiarity with BitTorrent and had told the agents that he had never heard of it. *Id.* at 203. Indeed, he testified that the first time he had ever heard the word "BitTorrent" was during that interview. *Id.* at 255. He said that, when asked about whether he had ever downloaded music or movies, he had told the agents that he had downloaded the movie *Elf* to watch while he traveled. *Id.* at 203–05. He said that he had retrieved his tablet for the agents and had told the agents that, although he had not installed BitTorrent on it, he did have Vuze and had used that to download *Elf*. *Id.* at 205–06.

Neiheisel also testified that Agent Privette had then asked him how he organized his child pornography, and he had replied by saying, "I don't." Crim. Doc. 120 at 207. He denied that he had said anything about "the thrill of the hunt." *Id.* at 215, 260–61. He also denied that he had told the agents that he was familiar with search terms commonly used to search for child pornography. *Id.* at 215–16.

He also said that, when Agent Privette had shown him the list of file names, he had denied familiarity with any of them. Crim. Doc. 120 at 208. He acknowledged that the agents had shown him two video clips, but said that he had told them that he did not recognize them. *Id.* at 210.

He also testified that Agent MacDonald had asked him about BitTorrent

14

and where files downloaded via that program would be stored on his computer. Crim. Doc. 120 at 229–30. He claimed that he had replied by saying that he had not "torrented" enough stuff to know how it works. *Id.* at 230. Asked whether he had used the tablet or any other device to distribute child pornography on the date charged in the indictment, he testified, "Absolutely not." *Id.* at 232. He concluded his direct examination by testifying that he had not used his tablet—or any other device—to make child pornography available to others through a peer-to-peer network. *Id.*

### 3. Neiheisel's work computer

On cross-examination of Agents MacDonald and Privette, Bell elicited confirmation that Neiheisel had said that he had a work computer (issued by his employer, GE) in addition to his tablet, and that the agents had not seized that computer. Crim. Doc. 119 at 162; Crim. Doc. 120 at 81–83. Both stated that Agent Privette had been in communication with someone from GE about the work computer, and that the FBI had not sought to recover or review it, whether through a search warrant, a subpoena, or otherwise. *Id.*; Crim. Doc. 119 at 175–76. On redirect, Agent MacDonald explained that the FBI hadn't seized Neiheisel's work computer because it lacked the legal right to do so, as Neiheisel hadn't said that he had used that device to traffic in child pornography. *Id.* at 178.

In closing, Bell argued that there was reasonable doubt that Neiheisel had committed the charged offenses. Crim. Doc. 121 at 62. He emphasized the "lack of evidence," highlighting the fact that the FBI had found no child pornography, relevant search terms, or evidence that BitTorrent had been used on February 6 or 7 on the tablet that it had seized from Neiheisel. *Id*. at 79. He also argued that there was no evidence that the computer had been "wiped or deleted in any fashion." *Id*. at 80. He then said that "if that was all there was in this case, that would be reasonable doubt right there …. But there's more." *Id*. He then turned to "the work laptop," explaining:

> You haven't gotten any evidence that—what the forensic results would be, but you do know this. You do know that there was some contact between the FBI and the forensic people at GE. And you do know that the government has the ability to subpoena and issue search warrants for this data. So the lack of evidence, of any evidence of—well, maybe it wasn't this computer. It wasn't the computer that was sitting right next to him that he said he used. So, ladies and gentlemen, more reasonable doubt.

*Id*. at 80.

## D.    Section 2255 Motion

## 1.    Work Computer

In his section 2255 motion, Neiheisel contended that Bell had rendered ineffective assistance of counsel by failing to introduce evidence that Neiheisel's work computer hadn't contained child pornography, because (he

said) that enabled the government to argue that Neiheisel had used another computer (besides the tablet that law enforcement searched) to commit the charged offenses. Civ. Doc. 14 at 15. Relatedly, he claimed that Bell should have had his expert, Connor, examine the work computer to confirm that there was nothing incriminating on it so Connor could testify to that at trial. *Id.* at 15, 27.

At the evidentiary hearing, Agent Privette confirmed that the FBI never requested or obtained from GE a forensic report concerning the work computer because there was "no logical determination throughout the course of the investigation that the GE work computer was ever used for any type of criminal activity." Civ. Doc. 32 at 29–30. GE had seized the computer, and based on Agent Privette's interactions with GE, he didn't believe that GE had found any contraband on the device. *Id.* at 99–100. Agent Privette testified that based on his conversations with GE's chief legal compliance officer, and his own training and experience, Neiheisel could only access the computer with a particular credential, and people usually could not install their own personal software (like BitTorrent) on a work computer. *Id.* at 30, 96.

Bell testified that he had intended to elicit during cross-examination testimony from Agent Privette that GE had found nothing of value on the work computer, but that he had "digressed on the cross-examination of

Privette and didn't get to it." Civ. Doc. 43 at 48–49, 106. He characterized this as "something that I intended to do and a mistake that it didn't happen." *Id.* at 49. Bell stated that it would have "help[ed] to some extent to have had the … work computer excluded," but "[w]hether that … covers the universe of other computers, that's not really for me to say, but that would have knocked out one." *Id.* at 107, 110. Bell confirmed that he never intended to collect the GE computer to evaluate it because he expected to get the evidence in (about it not having child pornography) through Agent Privette. *Id.* at 48–49.

In his report and recommendation, the magistrate judge identified as a "potential deficiency" Bell's failure to introduce evidence that GE had found nothing improper on Neiheisel's work computer, and assumed without deciding that it "may have been deficient for Bell not to do so." Civ. Doc. 57 at 3, 40. But, in any event, the magistrate judge concluded, Neiheisel had not shown prejudice. *Id.* at 3, 40–42. The magistrate judge reasoned that given the evidence and arguments presented at trial—"including the unlikelihood that the jury thought [Neiheisel] committed the offense using the work laptop anyway"—Neiheisel had not shown a reasonable probability that the verdict would have been different, even if Bell had eliminated the work computer as a source of child pornography. *Id.* at 3. The district court agreed. Civ. Doc. 60 at 12–15.

## 2. Torrential Downpour

Neiheisel also argued in his section 2255 petition that Bell had been ineffective because he had failed to seek discovery concerning Torrential Downpour—whether by moving to compel the government to turn over information about it, asking his computer expert about its use in this case, or "direct[ing] him to assess the (un)reliability of the government's evidence based on the use of the program." Civ. Doc. 14 at 13–14, 21–22, 25. Neiheisel further contended that the government (in other instances) had "dismissed similar cases" rather than turn over information about the program, "out of fear the program will be proven to falsely and unreliably connect to IP addresses that are not being used to commit illegal acts." *Id.* at 13–14. Neiheisel argued that other criminal lawyers have alleged that Torrential Downpour has "falsely ensnared innocent persons" because it "allegedly has a quirk that often falsely identifies child pornography on files that are downloaded through IP addresses even where, like here, none are ever found after forensic evaluation." *Id.* at 23. In any case, Neiheisel contended, Connor "could certainly have testified about the unreliability of (and other questions raised by) the program[,] thus raising reasonable doubt." *Id.* at 22.

In his section 2255 litigation, Neiheisel moved to compel the government to "provide certain software operating information relating to

'Torrential Downpour'" because "[b]y information and belief, this program has a defect which falsely identifies the existence of child pornography on file sharing platforms where, as here, no child pornography is actually found upon follow up search." Civ. Doc. 4 at 2–3. The district court denied the motion, finding that Neiheisel had failed to show good cause because he "provide[d] no evidence that the program malfunctioned in this case, only speculation that it might have," and "good cause for discovery cannot arise from mere speculation." Civ. Doc. 16 at 2 (quoting *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006)).

At the evidentiary hearing, Bell testified that he was "virtually certain" that he had given Connor copies of the Torrential Downpour logs, and Connor testified that Bell had done so. Civ. Doc. 57 at 14, 45. But Connor hadn't advised Bell of any flaws with the Torrential Downpour program, or recommended obtaining its software information. *Id.* at 14. And Neiheisel did not introduce any evidence at the evidentiary hearing to support the claims he had referred to in his section 2255 petition, concerning Torrential Downpour's purported dangers of "falsely ensnar[ing] innocent persons" or "falsely identif[ying] child pornography on files that are downloaded through IP addresses[.]" Civ. Doc. 14 at 23; *see generally* Civ. Docs. 32, 43–44. Nor did Neiheisel identify any "'obvious red flags' that would have compelled all but

the incompetent to investigate Torrential Downpour[.]" Civ. Doc. 57 at 43.

The magistrate judge concluded as a result that "Bell reasonably relied on his computer expert in deciding not to move to compel access to Torrential Downpour's operating information[.]" Civ. Doc. 57 at 43. The magistrate judge also determined that even if Bell had moved to compel such access, it was speculative whether such a motion would have been granted. *Id.* The magistrate judge noted that Neiheisel had failed to prove "what, if any, helpful evidence would have come from an investigation of Torrential Downpour," especially because Connor hadn't identified anything beneficial that would have come from such an investigation. *Id.* The magistrate judge also observed that although Neiheisel "speculates that Torrential Downpour malfunctioned during the investigation[,]… he produces no evidence that [that] was actually the case." *Id.* Neiheisel did not lodge any specific objection to these findings, *see generally* Civ. Doc. 58, and the district court adopted the magistrate judge's report and recommendation as the court's opinion. Civ. Doc. 60 at 18.

### Standard of Review

In a section 2255 proceeding, this Court reviews the district court's findings of fact for clear error and its legal conclusions de novo. *Jones v. United States*, 82 F.4th 1039, 1046 (11th Cir. 2023). A claim of ineffective assistance of counsel is a mixed question of law and fact that this Court reviews de novo.

*Denson v. United States*, 804 F.3d 1339, 1341 (11th Cir. 2015). "To succeed on a claim of ineffective assistance, Petitioner must show both deficient performance and prejudice: (1) '[P]etitioner must show that counsel's representation fell below an objective standard of reasonableness,' and (2) '[P]etitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Chandler v. United States*, 218 F.3d 1305, 1312–13 (11th Cir. 2000) (quoting *Darden v. Wainwright*, 477 U.S. 168, 184 (1986)) (internal quotation marks omitted).

For the performance prong, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler*, 218 F.3d at 1313. A "reasonable probability" for purposes of the prejudice prong is "less than a preponderance," *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1210 (11th Cir. 2021), but "the likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

## Summary of the Argument

I.    The district court correctly determined that Neiheisel wasn't prejudiced by Bell's failure to introduce more evidence that his work computer contained no child pornography. He hasn't shown a reasonable probability

22

that the extra evidence would have changed the outcome at trial, given the strength of evidence against him and the fact that the government was not required to prove which specific device he had used to distribute child pornography.

II.     In his section 2255 motion, Neiheisel argued that Bell was deficient because he failed to investigate Torrential Downpour. He contended that a proper investigation might have revealed that the program is unreliable and has allegedly "falsely ensnared innocent persons." But he completely abandons that argument on appeal.

Instead, he reframes his complaint about Bell's failure to investigate Torrential Downpour in terms of how such an investigation would have supported his alibi defense. But this Court's COA did not authorize further review of his claim that Bell was ineffective for failing to present his alibi defense (which had been a central feature in his section 2255 motion), so this Court should not consider it.

Regardless, even if this Court were to entertain Neiheisel's attempt to rehash his alibi claim (now framed in the context of a failure to investigate Torrential Downpour), it should affirm the district court's judgment because he has failed to establish deficient performance or prejudice.

## Argument and Citations of Authority

**I.    The district court did not err in denying Neiheisel's claim that his counsel was ineffective for failing to introduce evidence that his work computer was clean.**

To succeed on an ineffective-assistance-of-counsel claim, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the petitioner has made an insufficient showing on one of those elements." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020). This Court "may resolve the performance and prejudice prongs 'in either order.'" *Ingram v. Warden, Holman Corr. Facility*, 80 F.4th 1304, 1311 (11th Cir. 2023) (quoting *Clark v. Comm'r, Alabama Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021)). Neiheisel has not made an adequate showing on either prong.

**A.    Given the strength of the evidence against him at trial, Neiheisel has not established a "reasonable probability" that the trial outcome would have been different but for counsel's alleged deficiency, as required by *Strickland*'s prejudice prong.**

To succeed on the prejudice prong, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Perkins v. United States*, 73 F.4th 866, 880 (11th Cir. 2023) (quoting *Strickland*, 466 U.S. at 694). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland*, 466 U.S. at 693. "Rather, '[c]ounsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Perkins*, 73 F.4th at 880 (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)) (internal quotation marks omitted); *see Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) ("[Petitioner] need not show that counsel's conduct more likely than not altered the outcome of his [trial]; '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'") (quoting *Strickland*, 466 U.S. at 694).

Even assuming that Bell's performance was deficient because he didn't introduce testimony that Neiheisel's work computer was clean (a point we do not concede), that did not prejudice Neiheisel. "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739, 749 (11th Cir. 2011) (quoting *Strickland*, 466 U.S. at 691). Assessing the probability of a different outcome under *Strickland* requires consideration of the totality of the evidence, "[t]aking the unaffected

findings as a given, and taking due account of the effect of the errors on the remaining findings[.]" *Strickland*, 466 U.S. at 695–96.

Neiheisel characterizes Bell's purportedly deficient performance as a complete failure to "put[] on evidence that showed Neiheisel's devices did not have any trace of" child pornography. Neiheisel's brief at 15–17. But that's not accurate; as the district court correctly observed, "the trial record is not altogether silent about the work laptop." Civ. Doc. 57 at 40. Bell elicited from the agents testimony from which the jury could conclude that the work computer was clean: although agents had been in touch with GE about Neiheisel's work computer, they didn't try to collect the device (even though they had power to do so). Crim. Doc. 119 at 175–76; Crim. Doc. 120 at 81–83. Bell highlighted as much in his closing, urging the jury to find reasonable doubt because there was no child pornography found on his tablet, and "[i]t wasn't the [work] computer that was sitting right next to him that he said he used." Doc. 121 at 79–80. In other words, Bell argued that the jury should infer that the work computer was clean because the government chose not to pursue it, despite having had the opportunity to do so.

Accordingly, the "unaffected findings" against which this Court evaluates prejudice includes these portions of the trial record in which Bell elicited testimony from which the jury could reasonably infer that Neiheisel's

work computer contained no child pornography. Such evidence was circumstantial, but it wasn't inferior; as this Court has long held, "no distinction is to be made between the weight given to either direct or circumstantial evidence." *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014) (quoting *United States v. Mieres-Borges*, 919 F.2d 652, 656–57 (11th Cir. 1990)). Plus, a jury is "free to choose between or among the reasonable conclusions to be drawn from the evidence." *United States v. Brown*, 996 F.3d 1171, 1184 (11th Cir. 2021) (quoting *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007)).

When viewed against the work-computer evidence that the jury did hear, the benefit of any other testimony that the computer was clean would have been marginal. That falls far short of showing prejudice. *See Bobby v. Van Hook*, 558 U.S. 4, 12 (2009) (finding no prejudice where counsel failed to introduce evidence that "arguably would have added new, relevant information," but petitioner hadn't shown why those "minor additional details … would have made any difference").

This is especially true because the evidence of Neiheisel's guilt was strong. So, even if Bell had done all that Neiheisel now wishes he had—by "putting on evidence that showed Neiheisel's [work computer] did not have any trace of the files that were shared," Neiheisel's brief at 15—there isn't a

reasonable probability that the trial outcome would have been any different.

After all, the government presented ample evidence to support a finding beyond a reasonable doubt that he had distributed child pornography. Most critically, Neiheisel confessed to agents that he had downloaded child pornography for "awhile" (and as recently as two months before)—and that he even recognized the titles and contents of some of the child-pornography files that had been shared with Deputy Watson through Neiheisel's IP address. Crim. Doc. 119 at 111–13; Crim. Doc. 120 at 23–25. He explained to the agents exactly how he searched for, downloaded, and organized his collection of child pornography. *Id.* at 26–27, 30–31; Crim. Doc. 119 at 114, 117. And Neiheisel affirmed his understanding that by keeping the videos in a shared folder on BitTorrent, he had made those files available to others. *Id.* at 131–32, 134; Crim. Doc. 120 at 47–51. He also said that he had deleted child-pornography files when he no longer needed them. *Id.* at 52; Crim. Doc. 119 at 135.

Although at trial Neiheisel completely denied any knowledge or use of a peer-to-peer file-sharing network to distribute child pornography, Crim. Doc. 120 at 203, 232, 255, that doesn't carry the day. Having seen and heard his testimony, the jury was free to discredit his claims (as it did), infer that the opposite of what he said was true, and treat that inference as substantive

evidence of his guilt. *See United States v. Hough*, 803 F.3d 1181, 1188 (11th Cir. 2015); *see also United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt.... [W]hen a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true.") (quoting *Atkins v. Singletary*, 965 F.2d 952, 961 n.7 (11th Cir. 1992)).

This is especially so because other evidence corroborated aspects of Neiheisel's confession. *See United States v. Green*, 873 F.3d 846, 853–54 (11th Cir. 2017) (surrounding circumstances that connect defendant to conduct he admitted can be used to substantiate his confession). Deputy Watson downloaded dozens of child-pornography files directly from a computer at an IP address registered to Neiheisel. Crim. Doc. 119 at 36–37, 43–44, 47–50, 57, 70, 72–74, 78–79; *see* Gov't Tr. Exs. 6, 15. The computer had shared those files with Deputy Watson through the BitTorrent network, using Vuze version 5.7.0.0. Crim. Doc. 119 at 78; *see* Gov't Tr. Ex. 1 at 8. And the FBI found that same Vuze version—and evidence that it had connected to the internet at Neiheisel's IP address—on a tablet that they seized from him months later. Crim. Doc. 119 at 78, 194–96.

In short, on this record, given the strength of the evidence against him

and the circumstantial evidence (that was already in the trial record) that his work computer was free of child pornography, Neiheisel cannot show that "every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional error[]'" in failing to introduce additional testimony that the work computer was clean, "'the result of the proceeding would have been different.'" *Jones*, 753 F.3d at 1184 (quoting *Strickland*, 466 U.S. at 694); *see Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

In insisting otherwise, Neiheisel emphasizes his claim that he had only two devices: his tablet and his work computer. Neiheisel's brief at 16–17. He argues that his "situation at trial would have materially improved" had the trial evidence showed that both his work computer and the tablet that he had turned over to the FBI were clean. *Id.* at 16.

Not so. His argument assumes the truth of his claim that he only ever had two devices with which he could have committed the charged offenses. But the only support for that self-serving assertion comes from Neiheisel himself; he only described having the two devices during his interview with the FBI agents, and he said as much at trial. Crim. Doc. 119 at 108, 162; Crim. Doc. 120 at 21, 81, 198, 204. But his statements don't make it true (and

indeed, the jury's guilty verdict shows that the jury disbelieved Neiheisel's testimony).

Plus, his mere claim of having two computers didn't foreclose the government from arguing that Neiheisel had used some other, unknown device to distribute child pornography, as charged. As this Court stated in its adjudication of Neiheisel's direct appeal, given the evidence adduced at trial, "the government properly urged the jury to infer that the FBI had 'got the wrong computer' and that Neiheisel had 'pulled a fast one' when he gave them his tablet because the child pornography was on some other device." *United States v. Neiheisel*, 771 F. App'x 935, 942 (11th Cir. 2019).

The evidence established that Neiheisel had shared child pornography from his IP address, using Vuze version 5.7.0.0. Civ. Doc. 32 at 49–50, 54; Crim. Doc. 119 at 48–50, 57–58, 73–75, 78; Crim. Doc. 120 at 65; Gov't Tr. Ex. 1 at 8–10; Gov't Tr. Ex. 15. The FBI found that same version of Vuze on the tablet that they collected from him, and observed that his IP address was in two of the Vuze log files. Crim. Doc. 119 at 78, 194–96. When interviewed, Neiheisel admitted that he had downloaded child pornography for "awhile" and that he recognized the titles and contents of some of the child-pornography files that had been shared with Deputy Watson through Neiheisel's IP address—including the videos at issue in Counts One and Two. Crim. Doc.

119 at 111–13, 115; Crim. Doc. 120 at 23–25. And he affirmed his understanding that by keeping the videos in a shared folder on BitTorrent, he had made those files available to others. *Id.* at 131–32, 134; Crim. Doc. 120 at 47–51.

Whether he did that through the tablet that the FBI collected (from which certain artifacts and files may have been deleted, Crim. Doc. 119 at 193, 199) or a third device doesn't matter. As this Court recognized, "the government was not required to prove what device was used to distribute the child pornography, only that Neiheisel knowingly placed the child pornography in a shared folder and knew that doing so gave others on the peer-to-peer network access to the files." *Id.* (citing *United States v. Carroll*, 886 F.3d 1347, 1354 (11th Cir. 2018)). That's exactly what the government did, and the incremental addition of testimony explicitly stating that Neiheisel's work computer was clean would only have had, at most, an "isolated, trivial effect"; it wouldn't have "alter[ed] the entire evidentiary picture." *See Strickland,* 466 U.S. at 696. Consequently, "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings," *id.*, Neiheisel has failed to meet his burden of showing that the verdict would reasonably likely have been different absent Bell's purported error.

**B.** **Bell did not provide deficient assistance by not obtaining expert review of the work computer or eliciting testimony about it at trial.**

Because the district court did not err in finding that Bell's failure to introduce affirmative evidence concerning Neiheisel's work computer did not prejudice Neiheisel, this Court need not address whether the district court erred in denying Neiheisel's claim that counsel was ineffective for failing to seek expert review of that computer. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted). But, even if this Court were to review that issue, it should still affirm.

"Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 689–90). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, [he] must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315; *see Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether

some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[.]") (quoting *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992)). And, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler*, 218 F.3d at 1314.

## 1. Expert Review of Neiheisel's Work Computer

Given these foundational principles, there is no merit in Neiheisel's complaint that Bell performed deficiently because he didn't have an expert examine the work computer. As this Court has recognized, "[e]very counsel is faced with a zero-sum calculation on time, resources, and defenses to pursue at trial." *Chandler*, 218 F.3d at 1314 n.14. In light of the minimal value that the additional work-computer evidence would have provided (whether or not a defense expert examined the computer), Bell's choice not to seek such examination was well within the "wide range of professionally competent assistance," and Neiheisel has not met his heavy burden to persuade this Court otherwise. *See id.* at 1314.

## 2. Additional Testimony About Lack of Child Pornography on Neiheisel's Work Computer

Similarly, Bell did not perform deficiently just because he didn't specifically elicit testimony that GE had found no contraband on the work

computer. This Court did not include this issue in the COA, but the COA constrains only the issues that an appellant may raise when challenging the denial of a section 2255 motion, *see McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011); a COA is not required for the defense of the judgment on alternative grounds, *see Jennings v. Stephens*, 135 S. Ct. 793, 802 (2015) (certificate-of-appealability requirement applies only when "an appeal" is "taken to the court of appeals"; it "assuredly does not embrace the defense of a judgment on alternative grounds"). So, regardless of the ground stated in the district court's order or judgment, this Court may affirm on any ground the record supports. *See Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017). And here, the Court can affirm because the record shows that Bell's performance was not deficient simply because he didn't elicit specific testimony that there was no contraband on Neiheisel's work computer.

As explained above, through cross-examination, Bell elicited testimony from which the jury could infer that Neiheisel's work computer was clean, and he exploited those facts in closing argument. Could he have emphasized that point more clearly by eliciting additional testimony? Sure, but "omissions are inevitable," and the issue "is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler*, 218 F.3d at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). As explained

above, the government's evidence established Neiheisel's guilt—and the fact that his work computer was clean did not vitiate the weight of the evidence against him. On this record, Neiheisel cannot show that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.

Bell's admission at the section 2255 evidentiary hearing that his failure to introduce such testimony was a "mistake," Civ. Doc. 43 at 49, does not compel a different conclusion. *See Atkins*, 965 F.2d at 960 ("[I]neffectiveness is a question which we must decide, [so] admissions of deficient performance by attorneys are not decisive."). After all, "[a] lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Id.* And here, especially because the work computer was not pivotal to Neiheisel's defense, Bell did more than enough.

## II. Neiheisel is not entitled to relief on his claim that his counsel was ineffective for failing to seek inspection of, or discovery related to, the Torrential Downpour software.

### A. Neiheisel abandoned the argument he lodged in the district court by failing to brief it on appeal, and the argument Neiheisel briefs here falls outside the scope of the certificate of appealability.

Neiheisel raised five distinct grounds for relief in his section 2255 petition. In relevant part, the first ground related to Bell's purported "fail[ure]

to present an alibi defense." Civ. Doc. 14 at 3–4. The third ground related to

Bell's failure to confront Agent Privette about his purportedly "misleading

testimony to the grand jury" and Bell's failure to investigate and introduce

evidence about Neiheisel's work computer. *Id.* And, as stated above, the fourth

ground related to Bell's alleged failure to investigate seek discovery concerning

Torrential Downpour software, to show that it was unreliable. *Id.* at 4, 13–14.

The magistrate judge followed that framework in ruling on his petition. *See*

Civ. Doc. 57 at 25–31 (ground one – alibi); 36–42 (ground three – grand-jury

testimony and the work computer); 42–44 (ground four – failure to investigate

reliability of Torrential Downpour). The district court did, too. *See* Civ. Doc.

60 at 9, 12–17.

  In its COA, this Court granted review of part of ground three (as to the

work computer only) and the fourth ground:

> (1) Whether the district court erred in finding that Neiheisel was
> not prejudiced by counsel's failure to introduce evidence that
> Neiheisel's work computer contained no child pornography; and,
> if so, whether the district court erred also in denying Neiheisel's
> claim that counsel was ineffective for failing to seek expert
> review of that computer; and
>
> (2) Whether the district court erred in finding that counsel was not
> ineffective for failing to seek inspection of, or discovery related to,
> specialized government software used at trial to show that child
> pornography was distributed from Neiheisel's home internet
> network.

Civ. Doc. 67 at 2–3. This Court's review is therefore narrowly limited to only

those particular issues. *See Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998) ("[I]n an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the COA.").

In the fourth ground of his section 2255 petition, Neiheisel claimed that Bell should have sought discovery concerning Torrential Downpour to establish Neiheisel's potential theory that the program was unreliable. Civ. Doc. 14 at 13–14, 21–22, 25. In support, he asserted suspicions that Torrential Downpour "falsely and unreliably connect[s] to IP addresses that are not being used to commit illegal acts," thus "falsely ensnar[ing] innocent persons" by "falsely identif[ying] child pornography on files that are downloaded through IP addresses even where … none are ever found after forensic evaluation." *Id.* at 13–14, 22–23.

On appeal, however, Neiheisel completely abandons those arguments by failing to brief them. *See generally* Neiheisel's brief. He challenges the district court's determination that even if Bell had moved to compel access to the Torrential Downpour software, it was speculative whether such a motion would have been granted. *Id.* at 18–19; *see* Civ. Doc. 57 at 43; Civ. Doc. 60. But he doesn't otherwise revisit the arguments he originally advanced below. Accordingly, he has abandoned them. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("Any issue that an appellant wants

the Court to address should be specifically and clearly identified in the brief. ...
Otherwise, the issue—even if properly preserved …—will be considered
abandoned.").

Instead, on appeal, Neiheisel focuses on his contention that "[e]vidence
that a computer connected to the Jacksonville IP address shared a [child-
pornography] file *through* February 8, when Neiheisel's computers were in
Cincinnati raises reasonable doubt that it was Neiheisel who connected on
February 6 or 7" (as charged in Counts One and Two). Neiheisel's brief at 20.
He argues that had Bell investigated Torrential Downpour to "determine[]…
how the program worked," he could have challenged the government's
contention that the Torrential Downpour logs showed that the undercover
computer's connection with a computer at Neiheisel's IP address ended before
he even left for Cincinnati on the evening of February 7. *Id*. But in so arguing,
he just rehashes his claim that Bell was ineffective for failing to raise his alibi
defense. Because the COA does not include that issue, this Court should
decline to address it. *See Borden v. Allen*, 646 F.3d 785, 789 n.1 (11th Cir. 2011)
(noting that COA "limits the issues to be considered in this appeal"); *Dorsey v.
Chapman*, 262 F.3d 1181, 1185 n.3 (11th Cir. 2001) (declining to address issues
raised in briefs that were not included in COA).

**B.** **Even if this Court were to entertain Neiheisel's attempt to rehash his alibi claim (now framed in the context of a failure to investigate Torrential Downpour), it should affirm the district court's judgment because he has failed to establish deficient performance or prejudice.**

Neiheisel now argues that without inspection of, or discovery related to, the Torrential Downpour software, he was unequipped to challenge the government's assertion that any connections between (a) the law enforcement computer and (b) a computer at Neiheisel's IP address that was offering child pornography had ended before he left for Cincinnati on the evening of February 7. Neiheisel's brief at 19–20. At the evidentiary hearing, the government established through agent testimony and Torrential Downpour activity logs that the two videos charged in the Indictment had been downloaded from Neiheisel's IP address on February 6, before 10:00 a.m. Civ. Docs. 30-2, 30-3; Civ. Doc. 32 at 49–50, 54, 61. That was about one day and a half before the evening of February 7, when Neiheisel flew to Cincinnati.[2] *Id.* at 54.

Neiheisel hasn't shown that Bell performed deficiently by failing to get additional information about the inner workings of Torrential Downpour to

---

[2]For purposes of this appeal, we assume the truth of Neiheisel's claim that he flew to Cincinnati on the evening of February 7. Agent Privette testified that even after conducting an investigation, he could not verify "100 percent" whether Neiheisel flew to Cincinnati on the evening of February 7, but he agreed that it was a reasonable conclusion. Civ. Doc. 32 at 70–71, 75.

bolster Neiheisel's supposed alibi defense. Bell testified that early on, Neiheisel told him that he had flown to Cincinnati on February 7. Civ. Doc. 43 at 36–37. Bell understood that to be a suggestion of a potential alibi defense. *Id.* at 37. But Bell didn't pursue it because generally, in his experience, alibis are "almost … never borne out by the facts and circumstances of the case." Civ. Doc. 43 at 37. And in this case in particular, he thought the fact that Neiheisel left town on the evening of February 7 "would not have really helped us a whole lot" because the last child-pornography download from Neiheisel's IP address had occurred before 3:00 p.m. that day. *Id.* at 38–39.

On these facts, it was reasonable for Bell to choose not to pursue the alibi defense—whether through further examination of Torrential Downpour or otherwise. This is especially so because "[g]iven the finite resources of time and money that face a defense attorney, it simply is not realistic to expect counsel to investigate substantially all plausible lines of defense," and "[a] reasonably competent attorney often must rely on his own experience and judgment, without the benefit of a substantial investigation, when deciding whether or not to forego a particular line of defense … so long as the decision was reasonable under the circumstances." *White*, 972 F.2d at 1224 (quoting *Gates v. Zant*, 863 F.2d 1492, 1498 (11th Cir. 1989)); *see Sullivan v. Sec'y, Fla. Dep't of Corr.*, 837 F.3d 1195, 1204–05 (11th Cir. 2016) ("Counsel's

investigation does not fall below *Strickland*'s standard so long as 'a reasonable lawyer could have decided, under the circumstances, not to investigate … particular evidence.'") (quoting *Payne v. Allen*, 539 F.3d 1297, 1316 (11th Cir. 2008)).

Nor has Neiheisel carried his burden of showing a "reasonable probability that, but for [Bell's failure to investigate Torrential Downpour], the result of the proceeding would have been different." *Perkins*, 73 F.4th at 880 (quoting *Strickland*, 466 U.S. at 694). As Agent Privette testified, the Torrential Downpour logs show that the last time an undercover computer connected with a computer at Neiheisel's IP address was at 2:38 p.m. on February 7—six hours before his flight to Cincinnati. Civ. Doc. 30-2; Civ. Doc. 32 at 46–48. Although the undercover computer tried to reconnect with the computer at Neiheisel's IP address for another half day, it failed to do so. *Id.* at 46–48, 79, 128–29. A Torrential Downpour log showing such attempts to reconnect was also introduced at trial in Government Exhibit 2. *See* Gov't Tr. Ex. 2 at 14–15; Civ. Doc. 44 at 9, 12. Neiheisel has not shown how inspection or discovery of Torrential Downpour's software would have made any difference, let alone reveal anything that would "undermine confidence in the outcome" of his trial. *See Jones*, 753 F.3d at 1184.

Neiheisel repeatedly contends on appeal that there was an "uninterrupted connection" between the law enforcement computer and a computer at Neiheisel's IP address from February 7 through February 8, when Neiheisel was in Cincinnati. Neiheisel's brief at 4, 7, 13. But all Neiheisel points to in support of that allegation is a five-page ICACCOPS log that he introduced at the evidentiary hearing. Civ. Doc. 40-4. According to him, it shows that a computer connected to IP address 76.106.190.147 (which was subscribed to Neiheisel at his apartment in Jacksonville at the time) shared a child-pornography file through February 8—when he was already in Cincinnati. Neiheisel's brief at 19–20. Therefore, he argues, there was reason to believe that someone else must have used his IP address to share child pornography. *Id*. at 20.

The hash value of the file (which begins with "2e71665ffd2e" but is cut off) appears to match that of a file that the FBI has identified as containing child pornography. *Compare* Civ. Doc. 30-2 (listing full hash value) *with* Civ. Doc. 40-4; *see* Civ. Doc. 32 at 32. But Neiheisel's remaining interpretation of the ICACCOPS log is speculative: the log is cut off on the right side, and doesn't show what activity is being recorded. *See* Civ. Doc. 40-4. Agent Privette was not familiar with the document and couldn't explain what it said because it was partially cut off. Civ. Doc. 32 at 122–23. Connor, Neiheisel's

own expert, likewise said he didn't know how ICACCOPS worked, and that

although he had done "close to 400 child porn cases," this was the first case in

which he had seen "what appears to be a log file." Civ. Doc. 43 at 227, 229.[3]

He acknowledged that it showed "something being logged," but couldn't

specify what. Civ. Doc. 44 at 7.

In sum, even after the benefit of an evidentiary hearing, Neiheisel can do

no more than speculate that the ICACCOPS report supports his alibi, and that

inspection or discovery related to Torrential Downpour would corroborate his

speculative interpretation. This falls far short of his burden of showing

prejudice as a result of Bell's choice not to investigate Torrential Downpour

further. *See Perkins*, 73 F.4th at 880 ("[A] petitioner must be able to point to

evidence of prejudice that amounts to more than mere speculation."); *Brownlee*

*v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) ("[S]peculation is insufficient to

carry the burden of a habeas corpus petitioner as to what evidence could have

been revealed by further investigation.") (quoting *Aldrich v. Wainwright*, 777

F.2d 630, 636 (11th Cir. 1985)).

---

[3]Neiheisel says in his brief that Connor said that "he was never given the ICACCOPS log pretrial," Neiheisel's brief at 19, but the record shows otherwise; at the evidentiary hearing, Connor testified that Bell had given him a copy of it before trial, *see* Civ. Doc. 43 at 226–27.

## Conclusion

The United States requests that this Court affirm the judgment and order of the district court.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

By:  *s/ Emily C. L. Chang*
EMILY C. L. CHANG
Assistant United States Attorney
Appellate Division
USA No. 166
400 W. Washington St., Ste. 3100
Orlando, FL 32801
(407) 648-7500
emily.chang@usdoj.gov

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 10,386 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was sent by CM/ECF on December 12, 2023, to:

JASON M. WANDNER, ESQ.
*Counsel for Jason Neiheisel*

*s/ Emily C. L. Chang*
EMILY C. L. CHANG
Assistant United States Attorney
